COMMONWEALTH VS. SECURITY ACCEPTANCE CORPORATION
(and a companion case[1]).

Bristol.   December 6, 1965. — February 3, 1966.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & SPIEGEL, JJ.

*Small Loans.*

Where it appeared that in 1961, after a sale of house siding for $1,900,
the seller, in order to enable the buyer to pay for the siding, advanced
$700 to discharge an indebtedness of the buyer to a third person and
received from the buyer an instalment note for an amount consisting of
$2,600 plus interest at a rate in excess of 12 percent per year, and that
the seller subsequently sold the note to an acceptance company for
$2,600, with an express limitation of the seller's liability to $1,900 in
the indorsement of the note, it was held that the advance of $700 was
an integral part of a single $2,600 transaction with the buyer and not a
separate loan, and that there was no violation of G. L. c. 140, § 96, by
either the seller or the acceptance company.

Two INDICTMENTS found and returned on February 7,
1964.

The cases were heard in the Superior Court by *Smith*, J.

*Warren K. Kaplan*, Assistant Attorney General (*Peter
B. Gay*, Assistant District Attorney, with him), for the
Commonwealth.

*Robert S. Jones* for Tilo Company, Inc.

*James D. St. Clair* (*Harold Hestnes & Bennett R. Katz*
with him) for Security Acceptance Corporation.

SPIEGEL, J.   The defendants, Security Acceptance Cor-
poration (Security) and Tilo Company, Inc. (Tilo) were
indicted for violating G. L. c. 140, § 96.[2]   The cases were

---

[1] Commonwealth v. Tilo Company, Inc.

[2] General Laws c. 140, § 96, read in pertinent part at the times of the trans-
actions here involved: "No person shall directly or indirectly engage in the
business of making loans of fifteen hundred dollars or less, if the amount to
be paid on any such loan for interest and expenses exceeds in the aggregate
an amount equivalent to twelve per cent per annum upon the sum loaned, with-
out first obtaining from the commissioner of banks . . . a license to carry on
the said business in the town where the business is to be transacted. . . ."

consolidated for trial and submitted to a judge of the Superior Court on a statement of agreed facts. The judge, without decision, reported the cases for determination of certain issues of law.

We summarize the pertinent facts. On or about August 16, 1961, Walter Holden, a sales representative of Tilo, contracted with John and Lillian Stallings for the sale of a composition type siding called "Duratex" to be applied to their home at a cash price of $1,900 for materials and labor. Subsequently the Stallings indicated their inability to pay cash, whereupon Holden offered to sell the goods and services on a time sale basis. "The Stallings then indicated their inability to make the monthly payment called for in the . . . time selling price because of other existing indebtedness," amounting to approximately $700, owed to the Bristol Acceptance Corporation (Bristol). Holden then proposed to advance $700 to the Stallings to liquidate their indebtedness to Bristol. The Stallings agreed and signed a note calling for the payment of $4,153.80 in eighty-four monthly instalments of $49.45 each. Holden determined the amount of the monthly instalments by "looking up the figure for $2,600 at eighty-four months in the chart . . . provided by . . . [Security] to Tilo."[3] Tilo informed Se-

---

Any person directly or indirectly engaging in the business of negotiating, arranging, aiding or assisting the borrower or lender in procuring or making loans of fifteen hundred dollars or less, for which the amount paid or to be paid for interest and expenses, including all amounts paid or to be paid to any other party therefor, exceeds in the aggregate an amount equivalent to twelve per cent per annum, whether such loans are actually made by such person or by another party, shall be deemed to be engaged in the business of making small loans, and shall be subject to sections ninety-six to one hundred and twelve, inclusive. If, after all deductions or payments, whether on account of interest, expenses or principal made substantially contemporaneously with the making of the loan, the amount retained by the borrower be fifteen hundred dollars or less, the transaction shall be deemed to be a loan in the amount of the sum so retained by the borrower after such deductions or payments, notwithstanding that the loan be nominally for a greater sum." This statute was amended by St. 1962, c. 795, § 1, to increase the amount of loans covered by its provisions from $1,500 or less to $3,000 or less.

[3] Computed on the basis of a declining balance, the interest rate on the note was 14.5 per cent per annum.

| | |
|---|---|
| Amount of loan | $2,600.00 |
| Interest | 1,553.80 |
| Amount of note | $4,153.80 |

curity of the transaction and Security agreed to purchase the note subject to completion of the work by Tilo and the advance by Tilo of the $700. When these conditions were met, Security purchased the note from Tilo for $2,600. Tilo indorsed the note expressly limiting its liability to $1,900. Tilo and Security have engaged in two or more previous transactions similar in all respects to the one in question. "[N]either . . . [Security] nor Tilo were licensed by the Commissioner of Banks under the provisions of c. 140, secs. 96–114." Each acted on the advice of its counsel, "given in good faith with knowledge of all the relevant facts," that its actions would not be in violation of the statute.

In view of our holding we need answer only the following question: "Do the facts set forth in the Agreed Statement of Facts constitute a violation by the defendants, or either of them, of the provisions of G. L., c. 140, sec. 96?"

The Commonwealth contends that Tilo with Security's assistance made a loan of $700 at a rate of interest greater than twelve per cent per annum. It points to the limitation of liability to $1,900 in the indorsement by Tilo to Security to show that the defendants understood the cash advance and the payment for the siding to be separate transactions. It argues that the purchase and installation of the siding was a "time sale" and not a "loan" and concludes that payment for the siding cannot be considered in determining the amount of the loan.

We do not think that the payment for the siding and the repayment of the advance are separate, distinct transactions. The note contained no allocation of the payments as between the amount due for the siding and the amount due for the advance to the Stallings to pay their preëxisting indebtedness. The advance was made to enable the buyer to pay for the siding and thus it became an integral part of the transaction. We note that the Commonwealth, in determining what it says was the interest rate, treated the advance and the cost of the siding as the "total principal balance."

The fact that the value received for the note consisted of separate items does not prove that they were separate transactions. *Skinner* v. *Cederberg,* 317 Mass. 773. In *Skinner* v. *Kapples,* 320 Mass. 269, a note was given for the balance remaining on a previous note plus a cash advance. We held there that the amount of the loan was the entire indebtedness covered by the note rather than merely the amount of the cash advance.

The exclusion of "time sales" from interest regulations permits a finance charge on the goods sold in excess of the allowable interest rate on loans. *Uni-Serv Corp. of Massachusetts* v. *Commissioner of Banks,* 349 Mass. 283, 286. It seems illogical to contend that the interest charged in this transaction was in excess of the permitted rate because a portion of the value received was for goods rather than for money.

In our view, the essence of this transaction is a sale with a subsequent refinancing of the buyers' indebtedness to assure their ability to pay. The contract for the sale of siding was for the cash price of $1,900. This sum plus the advance of $700 was the basis for Tilo's computations in setting the face value of the note.

The question raised by the report is answered: The facts set forth in the "Agreed Statement of Facts" do not constitute a violation by the defendants, or either of them, of the provisions of G. L. c. 140, § 96, and therefore the indictments are to be dismissed.

*So ordered.*