DORIS M. SLIGER, MARIE PRICE, AND EDWARD CHESLER, INDIVIDUALLY AND AS REPRESENTATIVES OF THE CITIZENS AND TAXPAYERS OF THE STATE OF NEW JERSEY, AND ALL OTHERS SOJOURNING THEREIN, PLAINTIFFS-APPELLANTS, v. R. H. MACY & CO., INC., A CORPORATION OF THE STATE OF NEW YORK, t/a BAMBERGER'S, DEFENDANT-RESPONDENT.

Argued September 28, 1971, October 12, 1971—
Decided December 6, 1971.

*Mr. Sanford Schneider* argued the cause for plaintiffs-appellants (*Mr. A. Robert Rothbard* and *Messrs. DeRose, Serratelli & Schneider,* attorneys; *Mr. Sanford Schneider* on the brief).

*Mr. Theodore L. Abeles* argued the cause for defendant-respondent (*Messrs. Lum, Biunno & Tompkins,* attorneys; *Mr. Theodore L. Abeles* on the brief).

The opinion of the Court was delivered

PER CURIAM. The sole issue before us is whether the general usury statute, *N. J. S. A.* 31:1–1, applies to the 1½% per month service or finance charge on revolving charge accounts of defendant, R. H. Macy & Co., Inc., t/a Bamberger's [Bamberger's], a retail department store.

The plaintiffs, customers of Bamberger's, seek to restrain it from charging interest on their revolving charge accounts in excess of the 7½% per year then allowed by the statute and an accounting and judgment for all monies "usuriously taken" and payment of the monies into a fund with the Clerk of the Court. Originally four plaintiffs sued indi-

vidually and also alleged a class action. Joined as defendants were Bamberger's and several other corporations. After commencement of the action, the suits against all the corporate defendants except Bamberger's were dismissed, and the plaintiff Schneider's action was also dismissed as her complaints were pertinent only to defendants no longer in the suit.[1] The remaining defendant, Bamberger's, moved for summary judgment. Judge Herbert granted defendant's motion holding the transactions were sales rather than loans or forbearances of money and hence not within the compass of the general usury statute. He also refused to determine whether the suit was a valid class action.[2] Plaintiffs appealed and we granted certification before argument in the Appellate Division.

There is no factual dispute. In 1956 the "Flexible Charge Account Plan," commonly known as a revolving charge account, was adopted by Bamberger's. Under the plan the customer and Bamberger's enter into an agreement with regard to future purchases. If the customer does not wish to pay cash for a particular item he presents his charge card and the sale is recorded for billing purposes subject to the prior agreement. The purchase is recorded on the customer's account and a monthly statement is mailed to him while there remains an unpaid balance. It is understood that the customer may pay the unpaid balance of his account in full within 27 days of the monthly statement sent to him and thereby avoid a finance charge; he may pay installments over a longer period in accordance with the payment schedule determined by the size of his balance. The minimum monthly payment is 10% of the balance due.[3] In exercis-

---

[1]There is no complaint that these dismissals were improper.

[2]On this appeal plaintiffs make no point of Judge Herbert's refusal to determine whether the suit is a valid class action.

[3]The defendant also has a special "Homemaker Account" for purchases of more expensive merchandise which requires a smaller percentage of the balance to be paid monthly than the "Flexible Account."

ing his choice to pay over the longer period the purchaser agrees to pay a "finance charge" of 1½% per month[4] "computed on the previous months balance * * * before deducting charge payments and credits and before adding new purchases * * *. There is a 50¢ minimum Finance Charge on balances of $10 to $33." The plaintiffs are subscribers to this plan.

Our usury statute forbids the taking of any value greater than $6 for the forbearance of $100 for a year unless a larger figure, but not greater than 8%, is allowed by the Commissioner of Banking and Insurance (now Commissioner of Banking). *N. J. S. A.* 31:1-1. On July 1, 1968, the Commissioner raised the maximum rate to 7½% and on April 16, 1970, to 8%. He reduced the interest rate to 7½% on April 7, 1971.

Plaintiffs contend that revolving credit is in the nature of a loan or forbearance of money and therefore the 1½% per month finance charge violates our general usury law; defendant contends that revolving credit is merely an example of the time-price differential which has traditionally been exempted from the coverage of the usury laws.

The overwhelming majority of courts have held that if there is an agreement between the seller and buyer stating a cash price and, in the alternative, a credit price, the transaction, if bona fide, does not involve usury, even though the difference between the credit and cash price if considered interest would be usurious. *Steffenauer v. Mytelka & Rose, Inc.,* 87 *N. J. Super.* 506 (Chan. Div. 1965), affirmed for reasons given below, 46 *N. J.* 299 (1966), and cases cited in 87 *N. J. Super.* at 510–511; *Annot.* 14 *A. L. R. 3d* 1065, 1077 (1967); *Annot.* 143 *A. L. R.* 238, 242 (1943); *contra; Sloan v. Sears, Roebuck and Co.,* 228 *Ark.* 464, 308 *S. W. 2d* 802 (1968); *Lloyd v. Gutgsell,* 175 *Neb.* 775, 124 *N. W.*

---

[4] The charge amounts to 18% per year after the first year.

2*d* 198 (1963).[5] The reason most frequently given for this conclusion is that an increase in price for a credit sale over the cash sale price is not a loan or forbearance of money. 14 *A. L. R. 2d, supra* at 1084; see also *Restatement, Contracts, Sec.* 526, *Illus.* 4. Revolving credit accounts, such as Bamberger's have been held by two highest state courts to be yet another kind of time-price differential. *Dennis v. Sears, Roebuck & Company,* 223 *Tenn.* 415, 446 S. W. 2d 260 (1969); see *Uni-Serv. Corp. of Mass. v. Commissioner of Banks,* 349 *Mass.* 283, 207 *N. E.* 2d 906 (1965); *cf. Commonwealth v. Security Acceptance Corporation,* 350 *Mass.* 159, 214 *N. E.* 2d 47 (1966); *contra; State v. J. C. Penny Co.,* 48 *Wis.* 2d 125, 179 *N. W.* 2d 641 (1970). The time-price doctrine is firmly imbedded in this state. See *Steffenauer, supra.* Although we have not heretofore considered the precise application of the time-price doctrine, we think the revolving credit concept does come within it, and doubtless there has been an element of reliance upon that doctrine. See *Hoag v. Ruffner,* 66 *U. S.* (1 Black) 115, 17 *L. Ed.* 38 (1861); see also *Durant v. Banta,* 27 *N. J. L.* 624 (E. & A. 1838); *Lo Bosco v. Resnitzky,* 120 *N. J. L.* 495 (Sup. Ct. 1938). This fact suggests the wisdom and fairness of leaving the issue with the Legislature, the author of the usury laws.

We have no doubt that the ever-increasing use of consumer credit techniques calls for regulations of and limitations upon the finance charges in revolving credit transac-

---

[5]It is interesting to note that the Arkansas court's result may have been compelled by the peculiar language of the Arkansas Constitution. *Ark. Const. Art. XIX, sec.* 13: "[*A*]*ll contracts* for a greater rate of interest then ten per cent per annum shall be void. * * *" (emphasis added); see *Dennis v. Sears, Roebuck & Company,* 223 *Tenn.* 415, 432, 446 *S. W.* 2d 260, 264 (1969); see also "Consumer Credit," 69 *Mich. L. Rev.* 1368, 1382 (1971). In Nebraska the import of the court's decision was nullified by an amendment to the Nebraska Constitution and an express validation of revolving credit charges. See *Ch.* 3 [1963] *Neb. Law Spec. Sess.,* amending *Neb. Const. Art. III, sec.* 18. *Neb. Rev. Stat. secs.* 45–204 to 45–208 (1968).

tions. However, we think these are matters which are for the consideration of the Legislature. See Warren, "Regulation of Finance Charges," 68 *Yale L. J.* 838, 866–867 (1959); Note, 71 *Colum. L. Rev.* 905, 916 (1971); "Consumer Credit," 69 *Mich. L. Rev.* 1368, 1388 (1971); Note, 55 *Minn. L. Rev.* 1244 at 1254 (1971); Note, 54 *Marquette L. Rev.* 223, 238 (1971). In this state legislation which would limit finance charges on retailers' revolving charge accounts to 1½% on the first $700 balance due and 1% on a balance above that has been unanimously passed by the Senate and General Assembly. The bill also allows a 50¢ minimum service charge. *Senate No.* 2154 (1971 *Session*). The bill awaits action by the Governor. The wisdom of that measure is not for us to consider. The responsibility rests with the other branches of the government.

The judgment of the Chancery Division is affirmed.

FRANCIS, J., concurs in result.

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, PROCTOR, HALL, SCHETTINO and MOUNTAIN—6.

*For reversal*—None.