ROLLINGER, Respondent v. J. C. PENNEY CO., Appellant

(192 N.W.2d 699)

(File No. 10929. Opinion filed December 15, 1971)
Order denying petition for rehearing 2-3-72

**Woods, Fuller, Shultz & Smith, Timothy J. Nimick,** and **J. B. Shultz,** Sioux Falls, for defendant and appellant.

**May, Boe, Johnson & Burke,** and **Gale E. Fisher,** Sioux Falls, for plaintiff and respondent.

PER CURIAM.

I

The important question involved in this appeal is whether a revolving charge account agreement between the parties results in usury prohibited by our statutes.[1] By summary judgment in a suit to recover the interest paid[2] the trial court so concluded and

---

1.  SDCJ, 54-3-7.

    "The highest rate of interest which it shall be lawful for any person to take, receive, retain, or contract for in this state, shall be eight per cent per annum, and at the same rate for a shorter time, and in the computation of interest, the same shall not be compounded."
    The above statute was amended in 1970 to allow 10% as maximum interest from February 24, 1970 until July 1, 1972. S.L.1970, Ch. 268.

2.  SDCL 54-3-12.

    "Any person or corporation contracting to receive a greater rate of interest or discount than eight per cent upon any contract, verbal or written, shall forfeit the whole of said interest so contracted to be received, and shall be entitled only to receive the principal sum due; and if any part of such interest shall have been paid it may be recovered in an action for that purpose, or set off in an action to recover such principal."

we agree. In so doing we join another midwestern jurisdiction, Wisconsin, which recently held "charges" above the cash price for merchandise purchased under a revolving charge account agreement that exceed maximum legal interest permitted by statute are usurious. State of Wisconsin v. J. C. Penney Co., 48 Wis.2d 125, 179 N.W.2d 641.

The revolving charge account agreement in the instant case is identical in form to the one involved in the Wisconsin case and the factual situation is substantially the same.

In brief, Penneys allowed its customers such as plaintiff to purchase merchandise on credit under a revolving charge account agreement. In a typical case a customer who wished to open a revolving charge account completed a credit application form which contained, on the back side, the terms of the charge account agreement. The customer would also sign the agreement. After investigation, the customer generally was approved for a limited amount of credit. The agreement operated for an indefinite period of time and a customer could make numerous purchases on his account up to the credit limit. When the customer purchased merchandise, he was given the option of paying cash or charging the purchase. If he decided to charge, he presented his charge card or charge plate and the sales check would be stamped with his name and account number, and he would sign it. The sales check stated the purchase was to be charged to the customer's account, and he agreed to pay for the merchandise in accordance with the terms of Penney's Charge Account Agreement which he had previously signed.

Under the agreement the customer had the privilege of paying the cash price of the purchases on his account without paying any monthly charges until the second billing date following the purchase. If not paid by that time he was charged a one and a half percent monthly rate on the unpaid balance of the account. Each month, the customer was required to pay a minimum amount dependent on the unpaid balance as set forth in the charge account agreement. Payments made on the account and credits for returned merchandise would be deducted and purchases

made during the current billing period would be excluded in arriving at the next balance. Purchases made during the current billing period, if unpaid as of the next billing date, would be merged into the account to derive the new unpaid balance for the succeeding bill. That the one and one-half percent monthly charge frequently exceeded the eight percent per annum maximum interest rate allowed in South Dakota is undisputed.

SDCL 54-3-1 defines interest as "compensation allowed for the use, or forbearance, or detention of money or its equivalent."

■ Usury is the wilful exaction of an interest rate exceeding the statutory legal rate and consists of four essential elements as noted by the Wisconsin court. These are: (1) a loan or a forbearance, either express or implied, of money or its equivalent; (2) an understanding between the parties that the principal shall be repayable absolutely; (3) the exaction of a greater profit than is allowed by law; and (4) an intention to violate the law. If all four elements exist, they infallibly indicate usury, irrespective of the form in which the parties have put the transaction, but the absence of any one of them conclusively refutes a claim of usury. 45 Am.Jur.2d, Interest and Usury, § 111, p. 97. Here as in Wisconsin, there is no serious dispute on requirements (2) and (3) but Penneys vigorously denies (1) and (4) are present. It maintains in a revolving charge account sale there is no loan or forbearance and the company had no intention of violating the law. These arguments were rejected by the Wisconsin court and we do likewise.

■ Although traditionally usury prohibited excess interest on a loan, the concept has been expanded to include forbearance as a potentially usurious transaction. Forbearance signifies a contractual obligation of a lender or creditor to refrain, during any given period of time, from requiring the borrower or debtor to repay a loan or debt. Hafer v. Spaeth, 22 Wash.2d 378, 156 P.2d 408, 411; see also Sloan v. Sears, Roebuck and Co., 228 Ark. 464, 308 S.W.2d 802, 804. In other words, the forbearance permits the debtor to keep the use of his money. The purchase

of goods creates an obligation to pay the cash price, and, until the full purchase price is paid, the buyer remains indebted to the seller.

The forbearance need not appear at the inception of the contract. The fact that the buyer enjoys a free period, usually 30 days or one billing period, in which he may postpone payment without charge or penalty does not alter the transaction. During this period the forbearance merely remains dormant and manifests itself automatically when the buyer does not pay the full purchase price before the second billing.

■ In our opinion forbearance that results in an interest charge above the statutory maximum is prohibited whether it comes into being simultaneously with the purchase or spontaneously with the expiration of the charge-free billing period. State of Wisconsin v. J. C. Penney Co., supra; Ulvilden v. Sorken, 58 S.D. 466, 237 N.W. 565.

As the Nebraska court said in Lloyd v. Gutgsell, 175 Neb. 775, 124 N.W.2d 198, 204:

"When we look through the form, can we come to any other conclusion but the one that the difference between the price and what the buyer finally pays is the cost of carrying the balance of the cash price? To put it another way, the charge is for the forbearance to collect the full cash price, or for the use of money. A rose is still a rose though we may label it a violet. This charge, regardless of its label, is interest."

■■ With respect to the requirement of intent to violate, the trial court was of the opinion "a purpose in use of the agreement to circumvent the usury statute (may be) implied from the circumstances of the case." Essentially this is what the trial court found in the Wisconsin case. An intent to violate may be inferred if the contract is usurious on its face. See Ulvilden v. Sorken, supra; Sloan v. Sears, Roebuck & Co., supra; Plastics

Development Corp. v. Flexible Products Co., 112 Ga.App. 460, 145 S.E.2d 655. In our opinion the trial court did not err in its determination of this issue upon the record.

In an early case involving our usury statutes, the court said they were enacted "in the interest of the borrower" and the statute regards "only the lender as guilty of a wrong". Wilson v. Selbie, 7 S.D. 494, 64 N.W. 537. We keep this principle in mind in the disposition of this appeal.

We are aware some courts have held revolving charge accounts are not subject to the usury statutes. Dennis v. Sears, Roebuck & Co., 1969, 223 Tenn. 410, 446 S.W.2d 260; Uni-Serv Corp. of Mass. v. Commissioner of Banks, 349 Mass. 283, 207 N.E.2d 906.[3] Neither of these cases is precisely in point; nevertheless we choose not to follow their reasoning and prefer the Wisconsin decision as the foundation for our holding. We briefly mention these cases.

Tennessee has a constitutional provision which prohibits interest rates in excess of 10% per annum. The legislature permitted a maximum rate of $1\frac{1}{2}\%$ monthly to be charged on revolving charge accounts. The Tennessee court refused to hold the statute unconstitutional on the basis that a revolving charge account sale was a bona fide credit sale and it was not usurious to charge and pay a higher price for a credit sale than for a cash sale.

Massachusetts has no usury statute, but it licenses certain lenders of money. In determining whether the issuer of credit cards came within the terms of the statute requiring a license, the court held the arrangement was essentially a time-sales financing arrangement in which credit is extended to purchase merchandise and a card holder could in no way use the plan to receive a cash loan; hence, it was not required to have a license.

---

3. In a case decided Dec. 6, 1971, Sliger v. R. H. Macy & Co., Inc., 59 N.J. 465, 283 A.2d 904, the Supreme Court of New Jersey held a revolving charge account not within their usury statute.

█ Rather strangely, this court has not heretofore had occasion to consider the time-price doctrine or its scope. Nevertheless, this court will take judicial notice that merchants in South Dakota as elsewhere for many years have sold merchandise and property under a time-price financial arrangement believing such sales if bona fide credit sales are free from usury. The Wisconsin court did not accept Penney's argument that revolving charge account sales were genuine time-price or credit sales and thus exempt from usury statutes. We likewise reject this argument.

As we have mentioned, Massachusetts and Tennessee have held revolving charge account sales are not covered by usury statutes. Nebraska and Arkansas, along with Wisconsin, appear to be contrary and they may currently represent a minority view. Nonetheless, we believe the minority view to be the more realistic under present economic conditions. In our opinion Penney's so-called service charge is interest incognito.

█ Courts have not hesitated to look behind the form of a transaction and to its substance to ascertain if in fact it is usurious. There are various factors to which the courts will look and various indicia to which they point in determining whether a particular transaction is not a true time-price sale. These are discussed in the Annotation, Advance in Price for Credit Sale as Compared with Cash Sale as Usury. 14 A.L.R.3d 1065. Some of these are (1) lack of evidence that the cost to the seller of handling a revolving charge account has any relationship to the service charge; the so-called service charge here is not in a fixed amount, but a percentage of the unpaid balance computed monthly; (2) insufficient disclosure of two prices, cash price and credit price; (3) computation of the sales tax on the cash price alone; (4) the buyer's failure to inform sales clerks how goods will be paid for until after the sale; and (5) preparation of the revolving charge account agreement in contemplation of future sales. These and others were mentioned in the trial court's opinion in the Wisconsin case and were also discussed by the appellate court. In our opinion a sale of merchandise made and to be paid for pursuant to a revolving charge account agreement such as we have here does not qualify as a true time-price sale.

## II

Plaintiff, Rollinger, commenced this action as a class action for the benefit of himself and all others similarly situated. SDCL 15-6-23. SDCL 15-6-23(c) provides:

"(1) As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision § 15-6-23 (c) may be conditional, and may be altered or amended before the decision on the merits."

Shortly after the action was instituted Rollinger moved for an order that the action be maintained as a class action. See Zeigler v. Gibralter Life Insurance Company of America, 8 Cir., 43 F.R.D. 169, Note 1. On May 4, 1970, the court entered its order denying the motion absolutely. On May 11, 1970, notice of filing the order was served upon counsel for the plaintiff.

On November 24, 1970, Rollinger again moved for an order determining that the action shall be maintained as a class action. On December 9, 1970, as a part of its summary judgment for Rollinger in the amount of $94.17, the court determined the action could properly be maintained as a class action,[4] and directed Rollinger to prepare a notice to be approved by the court.[5]

---

4. "It is hereby ORDERED, ADJUDGED AND DECREED that the within action is a proper class action under the provisions of SDCL 15-6-23, and may be so maintained; that said class shall consist of all those residents of the State of South Dakota who, on or after July 3, 1966, had executed and delivered to Defendant a charge account agreement, or who made purchases pursuant to a revolving charge account agreement, and who paid a time price differential or service charge upon the unpaid balance of any such purchases from time to time, and which service charges or time price differential exceeded the rate authorized by SDCL 54-3-7".

5. "It is further ORDERED, ADJUDGED AND DECREED that the notice required by SDCL 15-6-23(c) (2) be prepared by Plaintiff, in form to be approved by the Court, and which notice shall in addition set forth the proposed extent of the judgment, all as authorized by SDCL 15-6-23(d) (2); that said notice, when approved by the Court, shall be published once in daily public newspapers throughout the State of South Dakota, to-wit: Aberdeen American-News, Aberdeen, South Dakota; The Daily Plainsman, Huron, South Dakota; The Daily Republic, Mitchell, South Dakota; Rapid City Journal, Rapid City, South Dakota; Sioux Falls Argus Leader, Sioux Falls, South Dakota; and Yankton Daily Press and Dakotan, Yankton, South Dakota".

■ We need not here determine whether the action is properly maintainable as a class action. In our opinion when the trial court on May 4, 1970, entered an absolute order denying permission to so proceed this issue was adjudicated and it was a final judgment correctible only by an appeal. The time for appeal expired 120 days after it was filed and notice of entry was given. SDCL 15-26-2.

In Daar v. Yellow Cab Company, 63 Cal. Rptr. 724, 433 P.2d 732, the trial court refused to permit a class suit but the plaintiff was allowed to proceed alone on his cause of action for damages. The same situation prevailed here after the court entered its order on May 4, 1970. The California court said such an order is tantamount to a dismissal of the action as to all members of the class other than plaintiff. It "virtually demolished the action as a class action." In proceeding with an appeal by plaintiff the court then went on to say "If the propriety of such disposition could not now be reviewed, it can never be reviewed."

The rule, SDCL 15-6-23(c) (1), permits the court to enter an order which is conditional, and it may subsequently be altered or amended, see Zeigler v. Gibralter Life Ins. Co., supra, and in many cases this may be the cautious way to proceed, but this was not the situation in the instant case. We hold the provision in the summary judgment pertaining to class actions is of no effect.

III

Penneys also assigns error on the court's entry of summary judgment and its refusal to permit it to reopen after judgment. These matters have been reviewed and are considered without merit.

IV

As we have indicated under division I this court will take judicial notice of the widespread usage of revolving charge accounts in South Dakota and the absence of any prior decision

on whether they result in usury. The relief sought and granted in the Wisconsin case was an injunction prohibiting their use in a usurious manner. There was no discussion of retroactivity.[6]

█ Since the decision in Great Northern Railway Company v. Sunburst Oil & Refining Co., 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360, it has become established law that it is within the inherent power of the highest court of a state to give its decisions prospective or retrospective application without offending constitutional principles. Many courts have so done. See Annotations, 85 A.L.R. 262, 10 A.L.R.3d 1371.[7] This court has on occasion given prospective application to its decisions. Hurley v. State, 82 S.D. 156, 143 N.W.2d 722.

In the area of time-price sales and whether or not they were usurious, the Arkansas court in Hare v. General Contract Purchase Corp., 220 Ark. 601, 249 S.W.2d 973, gave prospective application to its decision. We have concluded to do the same in the interest of justice. To do otherwise we feel would be unfair and would result in undue hardship to many persons and business institutions who in good faith entered into revolving charge account agreements with their customers under the belief that they were within the time-price exemption from our usury statutes.

█ Hence, we give the caveat that from and after the date of this opinion, the use of revolving charge account agreements which result in charges exceeding maximum legal interest in this state are in violation of our usury statutes and subject to applicable penalties.

█ At the same time, we feel the plaintiff, Rollinger, should be rewarded for giving this court the opportunity to render

---

6. In a case note discussion of the Penney decision, Wisconsin Law Review, Vol. 1, pages 296, 307, the writer said:

   "The court did not discuss whether its decision was retroactive. If it is, then the Penney Company is subject to Wisconsin Statute section 138.06(3), which imposes a penalty or forfeiture of principal and interest up to $2,000 on a usurious contract. This would seem to be an unduly harsh penalty to impose upon a company for engaging in a practice as widespread as the use of revolving charge accounts, especially since such a practice has never previously been declared usurious by a court in this or any other state."

7. See articles by Paul J. Mishkin (1965), 79 Harvard Law Review, p. 56 and Walter V. Schaefer (1967), 42 New York University Law Review, p. 631.

a decision on an important question involved in what is a prevailing business practice. Accordingly, we hold that plaintiff is entitled to recover the sum of $94.17 in charges or interest which he has paid to Penneys together with costs in this court and in the trial court. See Molitor v. Kaneland Community Unit District No. 302, 18 Ill.2d 11, 163 N.E.2d 89.

The judgment of the trial court so providing is affirmed, but as it allows a class action to be maintained the judgment is reversed and the cause remanded with directions to strike all provisions allowing possible relief to members of a class other than plaintiff.

BIEGELMEIER, P. J., and HANSON, WINANS and WOLLMAN, JJ., concur.