W. A. WEHRMAN et al., Appellants, v. CLAUDE MOORE et al.. Appellees; ISADORE GROSSMAN, Intervener, Appellant.

**PARTNERSHIP:** Authority of Partner—Borrowing Money for Use
1 of Partnership. A member of a partnership has a right to borrow money for the use and benefit of the partnership.

**PARTNERSHIP:** Mutual Rights, Etc.—Ownership of Contract.
2 Where a partnership had a dealer's contract with a motor car company, and two of the partners advanced money for the purchase of stock in said company, and for a demonstrator, and the articles of partnership provided that, upon a partner's paying his pro rata share of the cost, he might acquire an interest in said stock issued to the other two partners, which was later reissued to the partnership, the contract belonged to the partnership.

**USURY:** Contracts—Terms at Time of Execution. A contract is
3 not usurious unless it is made so by its terms at the time of execution.

EVIDENCE: Burden of Proof—Proving Usury. The burden of proving usury rests upon the one alleging it.

CONTRACTS: Legality of Object and Consideration—Share of Profits in Lieu of Interest. A contract between a lender and a borrower for a share of profits in lieu of interest, if bona fide, is not illegal.

PARTNERSHIP: Settlement and Accounting—Sale of Partnership Property. Evidence reviewed, and held insufficient to show that part of the partnership property had been disposed of at a discount, without the knowledge or authority of the other partners.

*Appeal from Linn District Court.*—JOHN T. MOFFIT, Judge.

JULY 7, 1919.

THIS is a suit in equity for the cancellation of a written agreement assigning certain shares of the corporate stock of the Chandler Motor Car Company to the defendant Heins as collateral security for money loaned by him to the Iowa Motor Sales Company, a copartnership, and to restrain Heins from asserting any lien or incumbrance upon said stock, or from foreclosing the same. There was a decree in favor of the defendant Heins and against plaintiff and Isadore Grossman, intervener, and both appeal.—*Affirmed.*

*R. S. Milner,* for appellants.

*C. E. Wheeler, M. P. Cahill, O. N. Elliott,* and *Lewis Heins,* for appellees.

STEVENS, J.—I.   On or about February 2, 1913, W. A. Wehrman and Claude Moore orally agreed to enter into a copartnership, and to carry on the business thereof under the firm name and style of the Iowa Motor Sales Company. On the above date, the Iowa Motor Sales Company entered into a dealer's contract in writing with the Chandler Motor Car Company of Cleveland, Ohio, by the terms of which the said copartnership purchased a specified number of cars

monthly for certain months named in the contract. Later,
M. A. Trueblood became a member of the copartnership, and
written articles of agreement were prepared, on or about
September 15th following, and signed by the parties some
time in October. The articles provided that Moore should
devote his time to the management and control of the busi-
ness of the copartnership, but he contributed no capital to
the enterprise. Wehrman and Trueblood agreed to furnish
the funds necessary for the purpose of paying for cars and
supplies as needed.

Prior to the execution of the written contract, and some
time during the month of June, 1913, Wehrman and True-
blood each advanced $2,500 for 50 shares of the corporate
stock of the Chandler Motor Car Company, and $1,271 for
a demonstrator, and $250 for other expenses. The articles
of copartnership provided that, by the payment of his pro
rata share of the cost, Moore might acquire a one-third in-
terest in the corporate stock, which was originally issued
to Wehrman and Trueblood, but later reissued in the name
of the copartnership. Twenty-five shares of common stock
were issued with the fifty shares of preferred stock as a
bonus. One half of the corporate stock issued was retained
by the Chandler Motor Car Company as collateral security,
and one half was delivered to Wehrman and turned over to
Moore, and held by him until the same, together with the
shares held by the Motor Car Company, were assigned and
transferred to Heins.

Some time in September or October, it developed that
Wehrman and Trueblood were unable, or unwilling, to pro-
vide the necessary funds with which to pay for cars shipped
to the copartnership, in accordance with the terms of its
written contract with the manufacturer, whereupon Moore
arranged with Heins to advance $10,000, to be used in pay-
ing for cars, freight, etc. The total amount advanced un-
der this arrangement was $10,758, all of which has been

paid, except $3,537.29, which Heins claims is yet due him. Later, and in March or February, 1914, Moore, in the name of the copartnership, in writing assigned the 50 shares of preferred and 25 shares of the common stock to Heins as collateral security for the payment of the sums advanced by him, and delivered the demonstrator and stock to him. Neither Wehrman nor Trueblood knew of the assignment of the stock by Moore until some time thereafter.

On February 10, 1914, the Chandler Motor Car Company canceled its contract with the Iowa Motor Sales Company. The money advanced by Heins was applied to the payment of cars, freight, insurance, and some other small items. The cars first received were placed in a garage in Cedar Rapids, the manager being a brother-in-law of Heins', and released as sold, the proceeds received being turned over to Heins, to be applied upon the indebtedness due him.

Early in the spring, the Motor Car Company placed a new model on the market, and the cars on hand could not, therefore, be sold at the price formerly obtained therefor, and they were later sold at considerably less.

On September 26, 1914, Wehrman and Trueblood filed their petition in the office of the clerk of the district court of Linn County, alleging that Moore did not have authority to assign the corporate stock of the Motor Company, or to pledge the demonstrator to Heins as collateral security for the payment of the alleged loan of $10,000, and asked that Heins be permanently enjoined from asserting or claiming any right, interest, or lien upon the stock or demonstrator, and that plaintiffs be decreed to be each the owner of an undivided one-half interest therein. To this petition the defendant Heins filed answer, setting up the transaction with Moore, and asked judgment against the copartnership for the balance due him, and that he have a special execution against the property assigned to him. Moore also answered, alleging the violation of the partnership contract

by plaintiffs, and demanded damages on account thereof in the sum of $2,500.

During the trial, and on May 4, 1915, a stipulation, signed by plaintiffs and Moore, providing for a full and complete settlement of all controversies between them, and for a dissolution of the copartnership, was filed. On June 7th following, and before final decree was entered in the court below, the copartnership and each of the partners executed a written assignment of the corporate stock of the Chandler Motor Car Company to Isadore Grossman, for a consideration of $10,000; and on June 30th, and after the cause had been submitted, Grossman filed a petition in intervention, adopting the allegations of plaintiffs' petition, alleging that he had acquired the capital stock by purchase from the copartnership and the individual members thereof, and asked that Heins' pretended lien be canceled, and that he be required to surrender the stock to cross-petitioner. No notice of the filing of the petition of intervention was served upon the defendants.

The court found that the copartnership was indebted to Heins in the sum of $3,458.05, and that he had a lien on the stock and demonstrator, and entered a judgment *in rem,* and awarded special execution against the property. The decree further adjudicated the interests of the partners in the assets of the firm, in accordance with the written stipulation on file, and decreed a dissolution of the copartnership. Plaintiffs and the intervener appeal.

Upon application of the appellants therefor, an order was entered by Hon. Benjamin I. Salinger, one of the justices of this court, directing Heins to turn the corporate stock over to Grossman, upon the deposit of $4,200 in cash with the clerk of this court, to be held by him in lieu thereof, for the purpose of protecting the lien or whatever claim the said Heins might have thereto. Thereafter, application was made by the defendants, Heins and Moore, and by

Trueblood for the annulment of the order of Judge Salinger, and to require Grossman to return the stock. A motion was also filed to dismiss the appeals of plaintiffs and intervener. This application and motion to dismiss the appeals were denied, and an opinion filed sustaining the order made. *Wehrman v. Moore,* 177 Iowa 542.

II. The appeal, therefore, involves only the controversy between plaintiffs and defendant Heins. It is the claim of appellants: (a) That Moore was not authorized to borrow money of Heins in the name of the copartnership, or to assign the corporate stock or transfer the demonstrator to him as collateral security therefor, and that the written instruments executed by him for

1. PARTNERSHIP: authority of partner: borrowing money for use of partnership.

that purpose are of no effect, and void; (b) that the money advanced by Heins was not intended as a loan, but in furtherance of a joint venture upon the part of himself and Moore; and (c) that, if the same was intended as a loan, it provides for the payment of usury.

As before stated, Wehrman and Trueblood agreed to furnish the money to pay for cars and carry on the business of the copartnership, and Moore agreed to devote his time to the management of its business, the profits to be shared equally by them. Moore did not purchase an interest in the corporate stock, but same was issued to the copartnership, belonged thereto, and was in the possession of Moore. It is true that, in a settlement between the partners of the partnership assets, Moore would not be entitled to share in the stock, but it nevertheless belonged to the entity. The evidence shows that Wehrman and Moore, shortly before the negotiations resulting in the advancement by Heins of $10,000 were had, solicited a loan of him for use in paying for cars; and Moore testified that Heins told Wehrman he would take the matter under advisement and notify Moore.

At the time these negotiations began, the articles of copartnership had not been signed, but were signed before the money was advanced. Neither Wehrman nor Trueblood, both of whom resided some distance from Cedar Rapids, took an active part in the management of the partnership business. Money was needed with which to carry on the business; and Moore, as a member of the copartnership, had authority to obtain a loan for that purpose. It is obvious from the record that Wehrman later knew of the transactions between Moore and Heins, but made no objection thereto. It is not claimed that Trueblood was advised thereof, and it is conceded that neither he nor Wehrman knew of the loan until after it was consummated, except as before stated. The money was advanced during October, November, and December, 1913, and a small amount during February and April, 1914. It is not claimed that any part of the money in question was misappropriated by Moore, or improperly applied if the loan was authorized, except the item of $1,328.24, claimed by Heins as compensation for the loan and services rendered to the copartnership. Although the evidence is not in all respects satisfactory, and leaves the transaction open to some possible suspicion, we are, nevertheless, convinced that the preponderance thereof is in favor of the defendant. Moore undoubtedly had authority, as a member of the copartnership, to borrow money for the use and benefit thereof, and the evidence does not satisfy us that the transaction between him and Heins was not in good faith, and binding upon the copartnership.

We are also of the opinion that the corporate stock was the property of the Iowa Motor Sales Company. It was originally issued to Wehrman and Trueblood; but the corporation subsequently demanded the return 2. PARTNERSHIP: mutual rights, etc.: ownership of contract. of the stock so issued, and that the same be carried in the name of the copartnership, and new stock was accordingly issued in

the name thereof. The fact that Moore, in a settlement with the remaining members of the firm, was not entitled to share therein, does not alter the situation. The partnership, notwithstanding the cancellation by the Motor Company of its contract for cars, was a going concern, and had several cars on hand at the time the assignment was executed. It is not denied by counsel for appellant that, if the stock in fact belonged to the copartnership, Moore could legally transfer the same to a creditor thereof, as security for this indebtedness.

III. We come now to consider appellants' contention that the loan was usurious. The oral agreement between Moore and Heins, at the time the loan was agreed upon,

3. USURY: contracts: terms at time of execution.

was that Heins would unload the cars, and pay the freight; that W. H. Johnson, proprietor of the Windsor garage, who was also the subagent of the Iowa Motor Sales Company, with whom the latter had its office, would keep the cars until sold, the proceeds of such sale to be turned over to Heins, and applied upon the indebtedness due him. The contract did not provide for interest, but it was agreed that the cars should be sold to the trade by the Motor Sales Company at 20 per cent discount from the list price, and that certain of the profits received from the sale thereof should be paid to Heins, which, it is agreed, would be in excess of 8 per cent interest. The bill of lading for the cars shipped was delivered to Heins, who paid the freight, and also paid the Chandler Motor Car Company the amount due it for each car. The cars were stored at the Windsor garage, with the understanding that same would be released by Johnson when sold, upon the payment of the purchase price, which was to be turned over to Heins in payment of the money advanced by him. No time was fixed for the repayment of the money, and it is obvious that the profits to which Heins would be entitled under his agreement would be paid him

only as the cars were sold. No one could tell definitely when the cars would be sold. It is contended by Heins that the contract was not usurious, for the reason that the compensation to be paid for the use of the money also went to pay for services rendered by him for storage of the cars, and expenses in connection therewith; and that, in truth and in fact, the net profit to him would not exceed 8 per cent.

A contract is not usurious unless it is made so by its terms at the time of its execution. The burden of proving usury rested upon plaintiffs. *Brush v. Peterson,* 54 Iowa 243. The record does not disclose bad faith 4. EVIDENCE: upon the part of Heins and Moore, nor burden of proof: would it support a finding that they intend- proving usury. ed to evade the law against usury. The transaction, on the other hand, appears to have been in good faith, and clearly it was not, on its face, usurious. A contract between the lender and borrower for a share of profits in lieu of interest, if bona fide, is not illegal. 5. CONTRACTS: *Weaver v. Burnett,* 110 Iowa 567; *Seekel v.* legality of object and *Norman,* 78 Iowa 254; *Hough v. Hamlin,* consideration: share of profits 57 Iowa 359; *Gilmore & Smith v. Ferguson* in lieu of interest. *& Cassell,* 28 Iowa 220; *Waterman v. Baldwin,* 68 Iowa 255. The contract may have been a harsh one, but the articles of copartnership provided for such a contingency as happened; and, in the absence of a showing of bad faith upon the part of Heins and Moore, or an attempt by them to evade the law against usury, it cannot be said that the contract in question, although the contemplated profits to be paid to Heins for the use of the money and services rendered exceeded the legal rate, was usurious.

Other questions are discussed by counsel for appellants, among which is the claim made by them that the cars sold at a discount were disposed of by the agent of Heins, and with-

out the knowledge or authority of plaintiffs
or Moore, and that he should account for
the full price at which the same were sold
to the trade,—that is, $1,271,—instead of at
the price received therefor.

6. PARTNERSHIP :
settlement and
accounting :
sale of part-
nership
property.

A careful review of the evidence fails to convince us
that this claim of appellant is sustained thereby.   No good
purpose will be served by a review or discussion of the evi-
dence upon this point.   While the record is not entirely
free from doubt, and not wholly satisfactory in some par-
ticulars, we reach the conclusion that the decree of the trial
court was right, and it is, therefore,—*Affirmed*.

LADD, C. J., WEAVER and GAYNÒR, JJ., concur. ·