**FOREIGN COMMERCE, Appellee,**

v.

**Bernard TONN, Appellant.**

No. 85–3048.

United States Court of Appeals,
Third Circuit.

Argued Dec. 2, 1985.

Decided April 30, 1986.

Jon F. White (argued), Russell B. Johnson, Scott Silverlight, Isherwood, Hunter & Colianni, Christiansted, St. Croix, V.I., for appellant.

G. Luz A. James (argued), Christiansted, St. Croix, V.I., for appellee.

Before HUNTER, GARTH, and BECKER, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge:

This appeal requires us to review Virgin Islands statutes, one of which prescribes the legal rate of interest, the other of which proscribes usury. We hold that the defense of usury was properly asserted by Tonn, the defendant/appellant here.

### I.

On March 20, 1978, appellant Bernard Tonn purchased sliding glass doors and windows from appellee Foreign Commerce, Inc. for a total purchase price of $1,640.20. When Tonn failed to pay the balance of the purchase price within the ten-day period provided by the purchase agreement, his account was assessed a 1½ percent monthly service charge on the outstanding balance. Over a four-year period, Tonn made only sporadic payments totaling $800 on this debt. As of March 28, 1982, Tonn's debt, including principal and the assessed monthly "service charges," totaled $2,172.76.

On March 28, 1982, Foreign Commerce instituted an action for debt against Tonn in the Virgin Islands Territorial Court. In his answer and counterclaim, Tonn alleged that the monthly 1½ service charge violated the Virgin Islands' usury laws. 11 V.I.C. §§ 951 et seq. On September 30, 1983, the Territorial Court held that Tonn could not rely on the usury defense. Accordingly, on January 5, 1984, the court entered judgment against Tonn for the full amount of the debt.

Tonn appealed the Territorial Court judgment to the District Court of the Virgin Islands. On December 28, 1984, 600 F.Supp. 133, that court affirmed the Territorial Court's order. We reverse.

### II.

The sole issue before us is whether the 1½ percent monthly "service charge"[1] applied to Tonn's outstanding debt by Foreign Commerce violated the Virgin Islands usury statutes.

Those statutes provide in pertinent part:

§ 951 Legal rate of interest

(a) The rate of interest shall be nine (9%) per centum per annum on—

(1) all monies which have become due;

(2) money received to the use of another and retained beyond a reasonable time without the owner's consent, either express or implied:

(3) money due upon the settlement of matured accounts from the day the balance is ascertained; and

(4) money due or to become due where there is a contract and no rate is specified.

---

1. The district court concluded that a 1–½% monthly service charge was equivalent to an 18% annual rate. Tonn contends that the annual service charge rate was 19–½%. It is obvious and undisputed that either rate is in excess of the 9% rate established by the Virgin Islands usury statute. 11 V.I.C. § 951(a).

11 V.I.C. § 951(a).

§ 952. Usury

No person shall, directly or indirectly, receive in money, goods, or things in action, or in any other manner, any greater sum or value for the loan or use of money, or upon contract founded upon any bargain, sale or loan of wares, merchandise, goods, chattels, lands and tenements, than prescribed in this chapter.

11 V.I.C. § 952.

The district court, relying on an overwhelming majority of state precedents, noted that "a bona fide sale of consumer goods on credit does not constitute a loan within the meaning of the usury statute." (Foreign Commerce App. at 14). Thus, according to the district court, a finance charge in excess of the highest lawful interest rate allowed is permissible if the underlying transaction is in fact a sale of consumer goods and not a loan. *See e.g., Daniel v. First National Bank of Birmingham*, 227 F.2d 353, 356 (5th Cir.1955). According to the district court:

> The finance or service charge is generally defined as a charge for the privilege of purchasing on credit, expressed as a time price differential. It is designed to compensate sellers for additional risks and loss of interest which would ordinarily accrue upon immediate cash payment.

(Foreign Commerce App. at 14).

█ Usury, on the other hand, is most commonly defined as the exaction of a greater sum for the use of money than the highest rate of interest allowed by law. *Evans v. National Bank of Savannah*, 251 U.S. 108 (1919).

█ A service charge imposed on a consumer because of his failure to pay for the purchase of consumer goods within the time specified is not, according to the district court, a charge "for the use of money." Implicit in the district court's discussion was a distinction drawn between an installment sale and a loan. Therefore, the

district court concluded, service charges of the type involved here which are in excess of the statutory interest rate are not usurious.

However, on appeal, Tonn argues that a plain reading of 11 V.I.C. § 952 discloses that the legislature of the Virgin Islands clearly has stated that the imposition of any type of charge representing an amount greater than 9% per annum on any outstanding principal balance is impermissible as violative of section 952. This is so, claims Tonn, even though other state legislatures and courts have declared the law to be otherwise.

Of particular relevance to this action, 11 V.I.C. § 952 provides: "No person shall, directly or indirectly, receive in money ... any greater sum ... upon contract founded upon any ... sale ... of ... goods ... than prescribed in this chapter [9% per annum]." Thus, pursuant to the plain language of this provision, Tonn argues that contracts for the purchase of consumer goods fall within the ambit of the Virgin Islands' usury laws and that therefore charges in excess of 9% are prohibited.

In *State ex rel. Turner v. Younker Brothers, Inc.*, 210 N.W.2d 550 (Iowa 1973), the Supreme Court of Iowa, applying a state usury law substantively identical to 11 V.I.C. § 952, held that a revolving credit plan providing for a 1½ percent monthly compounded finance charge violated that state's usury laws.[2] In so concluding, the Iowa court noted that the overwhelming state and federal precedent holding that credit sales were not subject to usury laws was based on the principle that "a sale of goods or property ... is not a loan or forbearance of money as required by *their* usury statutes." 210 N.W.2d at 558. (emphasis added).

The Iowa court distinguished those cases based on the clear language of the Iowa usury statute, language which, the court noted, was similar to the Virgin Islands

---

**2.** The Iowa usury law provided:

"Illegal rate prohibited—usury. No person shall, directly or indirectly, receive in money or in any other thing, or in any manner, any greater sum or value for the loan of money,

or upon contract founded upon any sale or loan of real or personal property, than is in this chapter prescribed."

I.C.A. § 535.4.

usury statute. That statute "does not differentiate between the seller of property and the lender of money, a distinction upon which the time-price doctrine rests." *Id.* at 559. Since the Iowa usury statute "expressly includes contracts founded upon *any* sale or loan of real or personal property," the court held, "[t]his plainly means the statute governs contracts for the sale of property whether such contract embodies the characteristics of a revolving charge account transaction or an installment contract." *Id.*

The Iowa Supreme Court rejected the retail seller's characterization of its finance charge as a "service charge" designed to recover its reasonable costs of extending credit. The court concluded that since the amount of the service charge was based solely on the balance due and owing, it obviously bore no relationship to the level of alleged service expenses incident to the operation of its credit plans. As the court put it:

> [I]f the alleged "service charge" ... assessed were in fact a true charge only for the servicing of the account, one would expect such charges to be approximately the same regardless of the balance remaining.

*Id.* at 561.[3] Thus, the court held that the Younker Brothers "finance charge" was in effect interest in excess of the maximum rate allowed by Iowa's usury laws.

Our examination of the case law in other jurisdictions upon which the district court relied, holding that service charges reflecting the time price differential for the extension of credit are not interest on a loan or the forbearance of money and therefore not subject to those states' usury laws, reveals that those decisions were based solely on the language of the particular jurisdiction's usury statutes. Those statutes, unlike section 952 of the Virgin Islands Code, however, do not subject contracts for the sale of personal property to the interest limits of those jurisdictions' usury laws. However, where, as here, the usury statute expressly so provides, *Younker Brothers* is persuasive. Indeed, if a word-by-word comparison of the Iowa and Virgin Islands statutes is undertaken, it is evident that, with minor grammatical exceptions, the substance of the two statutes is identical.

In light of the plain language of 11 V.I.C. § 952, the district court's application of the standard time price doctrine to installment sales is misplaced. In the absence of any indication to the contrary, either in the cases or the legislative history of the Virgin Islands, the statutory command of 11 V.I.C. § 952 compels us to reverse the district court's judgment.[4]

Accordingly, we hold that the charge imposed by Foreign Commerce is indeed interest in excess of the lawful rate prescribed by the Virgin Islands usury laws, and therefore cannot be enforced.[5]

3. As in *Younker Brothers*, the service charge assessed against Tonn did not remain the same regardless of the amount of the outstanding balance. Rather, the "service charge" was based solely on the outstanding balance and thus varied over time.

4. Even assuming, as does the dissent, that § 952 was patterned after Iowa's usury statute, a fact which the legislative history does not establish, our interpretation comports with the interpretation given Iowa's statute in 1973 by the Iowa Supreme Court in *Younker Brothers:* the plain language of both the Iowa and Virgin Islands statutes proscribe interest in excess of the established maximum rate regardless of whether a transaction is a retail sale or a loan. According to *Younker Brothers*, prior to 1973 no conclusive precedential value could be accorded to *Gilmore & Smith v. Ferguson & Cassell*, 28 Iowa 220

(1869), or other cases obstensibly addressing the issue which *Younker Brothers* decided. *Younker Brothers*, 210 N.W.2d 556-57. Thus, by following the *Younker Brothers* analysis, we have not deviated from the instruction of *Berkeley v. West Indies Enterprises, Inc.*, 480 F.2d 1088 (3d Cir.1973).

We note also, as does the dissent, that although Alaska has a statute similar to those of the Virgin Islands and Iowa, that state's highest court has yet to confront the issue of its usury statute's applicability to retail credit sales. Dissent at 10. Given the Iowa court's interpretation in *Younker Brothers*, and our holding today, we are constrained to predict that Alaska would favor a similar construction.

5. In holding that the service charge imposed on Tonn is usurious under the Virgin Islands usury statutes, we are not unmindful that our decision

### III.

Since we have found that the interest charged Tonn by Foreign Commerce is usurious under 11 V.I.C. § 952, Tonn is entitled to a forfeiture of the entire interest on his debt pursuant to 11 V.I.C. § 954. As that section states, "the court ... shall render judgment for the amount due on the sum loaned or the debt contracted, without interest, against the defendant [Tonn], and for the costs of the action, against the plaintiff [Foreign Commerce], whether such action is contested or not." [6]

Tonn, however, is not entitled to collect double the amount of interest charged by Foreign Commerce. Section 953 provides for double damages, but only where the creditor has *received* the improperly charged interest in the first instance.[7] Here, Tonn has failed to pay any interest at all. Indeed, Tonn has yet to pay the principal amount due on his debt. Under these circumstances, while Tonn is relieved from paying interest, he is not entitled to double interest damages.

### IV.

We will vacate the district court's order of December 28, 1984 which affirmed the Territorial Court's order of January 5, 1984 awarding Foreign Commerce $2,676.27 together with its costs including an attorney's fee in the amount of $500.00. We will remand this case to the district court with the direction that judgment be entered for Foreign Commerce in the amount of the principle due Foreign Commerce, or $840.20. The district court, pursuant to the command of 11 V.I.C. § 954, shall assess the costs of the action in favor of Tonn. Each party will bear its own costs on this appeal.

HUNTER, Circuit Judge, Dissenting:

1. Although the Majority is fully cognizant that the result it reaches today is inconsistent with the traditional judicial interpretation of usury statutes, it nevertheless believes that the "plain language" of the Virgin Islands' statute compels its holding. In my view, this conclusion reveals a fundamental misunderstanding of the doctrine that formed the foundation for the Virgin Islands' usury law. Moreover, the Majority Opinion ignores the established canons of Virgin Islands statutory interpretation. I must dissent.

### I.

First enacted in the American colonies in the late seventeenth and early eigh-

---

is contrary to the many statutes providing that installment sales are not ordinarily considered loans subject to usury laws. However, our decision is compelled by the plain language of the Virgin Islands statute, and, therefore we must leave it to the legislature of the Virgin Islands in the exercise of its prerogative to alleviate any financial dislocations caused by our interpretation of 11 V.I.C. § 952. To that end, we have directed the Clerk to forward a copy of this opinion to the Governor's Counsel, the Attorney General and the majority and minority leaders of the Virgin Islands Legislature.

6. 11 V.I.C. § 954 provides:
§ 954. Forfeiture of Interest
If it is ascertained in any action brought on any contract, that a rate of interest has been contracted for greater than is authorized by this chapter, whether directly or indirectly, in money, property, or other valuable thing, or that any gift or donation of money, property, or other valuable thing has been made or promised to be made to a lender or creditor, or to any person for him, the design of which

is to obtain for money loaned or for debts due or to become due, a rate of interest greater than that specified by the provisions of this chapter, the same shall be usurious and shall work a forfeiture of the entire interest on the debt. The court before which such action is prosecuted shall render judgment for the amount due on the sum loaned or the debt contracted, without interest, against the defendant, and for the costs of the action, against the plaintiff, whether such action is contested or not.

7. 11 V.I.C. § 953 provides:
§ 953. Usury; borrower's right to collect double damage
If usurious interest, as defined by sections 951 and 952 of this title, shall be received or collected, the person or persons paying the same, or their legal representatives, may by an action brought within two years after such payment, receive from the person, firm, or corporation, having received the same, double the amount of the interest so received or collected.

teenth centuries, usury laws were designed to protect the debtor class—the so-called "borrowing class"—from exploitation by unscrupulous money lenders. Firmly rooted in the morals of pre-industrial society, usury laws also benefited merchants by ensuring the availability of commercial credit at reasonable rates. These laws rested on a sharp conceptual distinction between money, which could and should be regulated, and commodities, which were traded on the open market free from legislated price restrictions. *See* Shanks, *Practical Problems in the Application of Archaic Usury Statutes*, 53 Va.L.Rev. 327–28 (1967).[1]

Eventually, the distinction between money and commodities collapsed, but not before judicial interpretation of usury laws incorporated the distinction in the "time-price differential" doctrine. The doctrine holds that finance charges in excess of the highest lawful rate of interest are not within the scope of usury laws if the charges are included in a bona fide sale contract as part of the "time" or credit price. The Supreme Court placed its imprimatur on this doctrine in 1861, stating:

> [I]t is manifest that if A propose to sell to B a tract of land for $10,000 in cash, or for $20,000 payable in ten annual instalments, and if B prefers to pay the larger sum to gain time, the contract cannot be called usurious. A vendor may prefer $100 in hand to double the sum in expectancy, and a purchaser may prefer the greater price with the longer credit; and one who will not distinguish between things that differ, may say, with apparent truth, that B pays a hundred per cent for forbearance, and may assert that such a contract is usurious: but whatever truth there may be in the premises, the conclusion is manifestly erroneous. Such a contract has none of the characteristics of usury; it is not for the loan of money, or forbearance of a debt. *Hogg v. Ruffner*, 66 U.S. (1 Black) 115, 118–19 (1861).

The time-price differential doctrine may profitably be viewed as a judicial gloss on usury laws premised on the conceptual distinction between money and commodities and the underlying policy of usury statutes, *i.e.*, to protect certain favored classes against lenders who would otherwise loan money at exorbitant rates. *See* 45 Am. Jur. 2d § 127 (1969); Annot., 14 A.L.R.3d 1065, §§ 4, 5 (1967). The doctrine does not exclude the sales of goods entirely from the usury laws, however. Most courts recognize that the doctrine was never intended to shield "sham" transactions, *i.e.*, sales that are actually loans, rather than sales of real or personal property. *See* Note, *Judicial and Legislative Treatment of "Usurious" Credit Sales*, 71 Harv.L.Rev. 1143, 1144 (1958). In so qualifying the doctrine, those courts review the transaction to ensure that a bona fide credit sale exists, *i.e.*, that the form of a "sale" does not conceal its true nature as a loan. *See Daniel v. First National Bank of Birmingham*, 227 F.2d 353, 356 (5th Cir.1955); *McGalliard v. Liberty Leasing Co.*, 534 P.2d 528, 530 (Alaska 1975). Whether a particular transaction is a scheme to evade the application of usury laws is generally considered to be a question of fact, Annot., 14 A.L.R.3d 1065, § 12 (1975), and a number of tests to indicate the presence of a usurious "sale" have been formulated. *See* Annot., 14 A.L. R.3d 1065, § 13. In the consumer context, these tests are directed toward preventing adhesive credit contracts by ensuring the disclosure of the difference between the cash price and the credit price:

> [O]ne indicium frequently cited as indicating that a purported sale on credit at a price higher than would have been

---

1. On the distinction between "commodities" and "money," Mr. Shanks observes:

> Although it was not thought necessary or desireable to fix the price of other commodities which competed on the open market, money was somehow different. It was abstract and was controlled by mysterious forces beyond the ken of even the better educated citizens. Money was not in itself useful—only what it could buy was useful—and its cost—or at least its maximum cost—should be established on the basis of what seemed "right" to the legislators.

Shanks, 53 Va.L.Rev. at 328.

charged for a cash sale is merely a scheme or device to evade the usury laws, is that there was no clear disclosure by the seller of the two prices, or as it is sometimes stated, that the buyer has no real choice between a cash sale at one price and a credit purchase at an advanced price.

Annot., 14 A.L.R.3d 1065, 1128–29.

In the instant case, the district court, relying on the general acceptance of the time-price doctrine in the context of revolving charge account agreements, *see Kass v. Garfinckel, Brooks Brothers, Miller & Rhoads, Inc.*, 299 A.2d 542 (D.C.App.1973) (18% per annum); *Sliger v. R.H. Macy & Co., Inc.* 59 N.J. 465, 283 A.2d 904 (1971) (18% per annum), held that the doctrine applied to Foreign Commerce's charge account. In so holding, the court correctly followed the dictates of V.I. Code Ann. tit. 1, § 4 (1967), which requires Virgin Islands courts to apply the majority common law rule. *See Benoit v. Panthaky*, 780 F.2d 336, 339 (3d Cir.1985).

On the record before us, however, it is evident that the district court erred in failing to consider whether Foreign Commerce disclosed the time-price to Tonn. Indeed, the only evidence that bears on disclosure is the receipt's statement that the net price would be due in ten days. Lacking a finding as to whether Foreign Commerce adequately disclosed the 1½% service charge, I would remand this case to the district court.

## II.

The Majority is unconcerned with the traditional judicial interpretation of usury laws because it grounds its decision on the "plain language" of the Virgin Islands usury statute. Maj. Op., typescript at 9. Specifically, the Majority reads the language in V.I. Code Ann. tit. 11, § 952 (1982)[2] to proscribe unlawful interest resulting from "any bargain, sale or loan of merchandise, goods, chattels, lands and tenements" literally. Yet this literal reading abstracts § 952 from the body of law providing the framework for the statute, and, in so doing, violates the accepted rules of statutory construction.

Three jurisdictions explicitly include the sales of goods in the language of their usury laws: Alaska, Iowa, and the Virgin Islands. The Majority rests its interpretation of § 952 on the Iowa Supreme Court's relatively recent interpretation of the Iowa usury statute. In *State ex rel. Turner v. Younker Brothers, Inc.*, 210 N.W.2d 550 (Iowa 1973), the Iowa Supreme Court discarded more than one-hundred years of Iowa precedent when it held that the time-price differential doctrine did not apply to a sale of goods. In 1869 the court had reached the opposite result, analyzing its usury statute[3] with language closely tracking the Supreme Court's reasoning in *Ruffner*:

[O]ne man may rightfully sell his property to another for a certain sum in money down; or he may ask and receive a much larger sum on condition it is not paid for till a future day, and the fact that the increased price payable at a future day was more than the legal interest on the cash price, would not make the contract usurious. In other words, the owner of property may sell it for such price as he can get, either in cash down or payable at a future day, and although the price payable at the future day may be twice or thrice as much as the down price or as many per cent per month more than it, yet this will not make it usurious. The

---

**2.** V.I.Code Ann. tit. 11, § 952 provides:
  No person shall, directly or indirectly, receive in money, goods, or things in action, or in any other manner, any greater sum or value for the loan or use of money, or upon contract founded upon any bargain, sale or loan of wares, merchandise, goods, chattels, lands and tenements, than prescribed in this chapter.

**3.** Iowa Code Ann. § 535.4 (West 1950) provides:
  Illegal rate prohibited—usury. No person shall, directly or indirectly, receive in money or in any other thing, or in any manner, any greater sum or value for the loan of money, or upon contract founded upon any sale or loan of real or personal property, than is in this chapter prescribed.

reason is, that such contracts are not within the statute against usury. Of course, if such contracts are resorted to as a cover for usury—to evade the usury laws—they will be held usurious. But the jury did not so find in this case. *Gilmore & Smith v. Ferguson & Cassell,* 28 Iowa 220, 223 (1869). Until 1973, the Iowa Supreme Court relied on *Gilmore & Smith* for the proposition that bona fide sales of goods or services were not covered by the Iowa statute. *See McGill v. Griffin,* 32 Iowa 445 (1871); *Weatherby v. Smith,* 30 Iowa 132 (1870); *Conrad v. Gibbon,* 29 Iowa 120 (1870). Indeed, just three years before Congress enacted the first Virgin Islands Codes, including Title II, ch. 21 § 2,[4] the predecessor to § 952, the Iowa Supreme Court cited with approval the *Gilmore & Smith* Court's analysis of Iowa's usury law. *See Wehrman v. Moore,* 186 Iowa 1124, 1132, 173 N.W. 154, 157 (1919).

The striking similarity between the Iowa and Virgin Islands statutes alone compels the Majority to follow *Younker Brothers.* Maj. Op., typescript at 9. I am prepared to grant the Majority's assumption that the Virgin Islands statute is patterned after the Iowa statute.[5] Although I have not been able to locate legislative history stating that § 952 has its roots in the Iowa statute, this seems a reasonable conclusion in light of the similarity in language and Iowa's apparent status as the only jurisdiction with such a statute in 1921.[6] Given these circumstances, Third Circuit precedent provides the basis for interpreting § 952 to include the time-price doctrine. In *Berkeley v. West Indies Enterprises, Inc.,* 480 F.2d 1088 (3d Cir.1973), we set out the rule for interpreting Virgin Islands statutes patterned on statutes used

in other jurisdictions. Judge Maris, speaking for the court, noted:

[T]he rule of statutory construction which is settled in the Virgin Islands that the language of a Virgin Islands statute which has been taken from the statutes of another jurisdiction is to be construed to mean what the highest court of the jurisdiction from which it was taken had, prior to its enactment in the Virgin Islands, construed it to mean.

*Berkeley,* 480 F.2d at 1092 (citations omitted); *see also Matter of the Estate of Buckley,* 536 F.2d 580, 582 & n. 5 (3d Cir.1976). The Iowa Supreme Court had consistently interpreted the Iowa statute as subject to the time-price doctrine until 1973. *Younker Brothers,* then, is clearly irrelevant to this court's analysis of § 952.

The Majority has to rely on *Younker Brothers* to reach its judgment. It makes no sense to me to base a decision that may engender a good deal of social disruption on so uncertain a reed as *Younker Brothers.* In my view, this case should be limited to its peculiar procedural and temporal circumstances. Two factors, not present in the instant appeal, appear to have influenced the Iowa Supreme Court in *Younker Brothers.* Most important, the Iowa Attorney General brought the suit in *Younker Brothers,* a circumstance that indicated both Iowa's dissatisfaction with the judicial gloss of the time-price differential doctrine and that the state was prepared to deal with the consequences of the doctrine's abolition. Not only is the Virgin Islands Attorney General not a party in this case, but we have not received any communication from the Virgin Islands government concerning § 952. The complete lack of interest suggests that the

---

**4.** This section of the 1921 Codes provided:

No person shall, directly or indirectly receive in money, goods, or things in action, or in any other manner, any greater sum or value for the loan or use of money, or upon contract founded upon any bargain, sale or loan of wares merchandise, goods, chattels, lands and tenements, than in this chapter prescribed.

**5.** Tonn's counsel asserted at oral argument that the § 952 is based on the Iowa usury statute.

We have yet to receive the requested supplemental briefing on this matter from Tonn.

**6.** Alaska, the other jurisdiction with a usury law similar to § 952, first codified its usury law in 1949. *See* Alaska Cons.L.Ann., § 25–1–2 (1949). Oregon apparently also included "sales of goods" in its statutory definition of usury, but removed this language before 1900. *See McGalliard,* 534 P.2d at 533.

government is content with the accepted judicial interpretation of its usury laws, or at least that it certainly does not expect that our decision today will change the rules in the middle of the game. Second, *Younker Brothers*, decided in the early nineteen-seventies, came down at the beginning of an era of high consumer interest rates. *See Statistical Abstracts of the United States, 1979*, 538 (table 879) (1979). Faced with the State Attorney General's request to "read out" the time-price differential doctrine it had read into the usury statute in 1869 and the debut of double-digit consumer credit rates, the Iowa Supreme Court's decision in *Younker Brothers* was perhaps inevitable. This combination of circumstances, however, makes *Younker Brothers* unique and consequently a very weak pivot on which to turn today's decision.

Conspicuously absent from the Majority's discussion is any mention of Alaska's usury statute. Alaska Code § 45.45.20 is nearly identical to the Virgin Islands and Iowa usury provisions.[7] Unsurprisingly, the Alaska Supreme Court construes § 45.45.20 according to the accepted principles of usury law: the statute permits the reviewing court to examine the form of a suspect transaction to ascertain whether it is subject to the usury prohibitions. Both Alaska courts that have discussed § 45.45.20 have adopted the traditional interpretation. *Compare Metcalf v. Bartrand*, 491 P.2d 747, 750–51 (Alaska 1971), *with McGalliard v. Liberty Leasing Co.*, 534 P.2d 528, 529–31 (Alaska 1975). The Alaska Supreme Court has not yet had the opportunity to face the question of § 45.-

45.20's applicability to retail credit sales. Nevertheless, the court has noted the potential problems with the extension of usury laws to consumer retail credit sales, and has indicated its unwillingness to follow the Iowa Supreme Court's *Younker Brothers* decision. *See McGalliard*, 534 P.2d at 533 n. 15.[8]

In my view, the Alaska Supreme Court's approach is preferable. Given the probable reliance of the Virgin Islands Code's drafters on a usury statute that had been consistently interpreted by the Iowa courts to include the time-price doctrine, the questionable and factually unique *Younker Brothers* decision overruling a century of Iowa precedent, and the Alaska Supreme Court's continued reliance on the traditional principles of usury law, I can see no other result. In light of traditional usury jurisprudence and our own precedent, what is "plain" is that the Virgin Islands Code § 952 must necessarily include the time-price gloss. The inclusion of sales transactions in § 952 assures that the Virgin Islands courts will have the latitude to examine any contract, regardless of form, that might be used as a device to evade the usury laws. A legitimate credit sale, however, is not such a device.

### III.

This is a very simple case. The district court erred only in failing to ensure that Foreign Commerce disclosed the 1½% service charge to Tonn at the time of the sale. Because the Majority has ignored our precedent in construing § 952, it has reached a result I cannot endorse. Accord-

---

**7.** Alaska Stat.Ann. § 45.45.20 (Michie 1985) provides:

*Higher rate of interest prohibited.* No person may, directly or indirectly, receive in money, goods, or things in action, or in any other manner, a greater sum or value for the loan or use of money, or upon contract founded upon a bargain, sale, or loan of wares, merchandise, goods, chattels, lands, and tenements, than is prescribed in §§ 10–70 of this chapter.

**8.** A number of commentators have examined the problems associated with the extension of

usury laws to retail credit sales. *See, e.g.*, Note, *Interest Incognito—Usury Statute Applied to Revolving Charge Account Agreement*, 34 U.Pitt.L. Rev. 54 (1972); Project, *An Empirical Study of the Arkansas Usury Law: "With Friends Like That ...",* 1968 U.Ill.L.F. 544: Warren, *Regulation of Finance Charges in Retail Installment Sales*, 68 Yale L.J. 839 (1959). The problems identified by the literature leave me with the conviction that a change in the Virgin Islands usury law is a matter best left to the legislature. *Cf. Sliger*, 59 N.J. at 470, 283 A.2d at 906.

ingly, I would vacate the district court's judgment and remand with appropriate instructions.