**H. E. LOCKHART MANAGEMENT, INC., Plaintiff**
**v.**
**SAIDA HUGHES d/b/a MODERN IMAGE, Defendant**
Civ. No. 303/1998
Territorial Court of the Virgin Islands
Div. of St. Thomas and St. John
March 19, 1999

Simone R. D. Francis, Esq., (Dudley, Topper and Feuerzeig), St. Thomas, USVI, *for plaintiff*

HOLLAR, *Judge*

### MEMORANDUM OPINION

This matter came on for hearing on the merits after an entry of default was entered. Following the hearing, this court reserved its decision until several material issues were addressed. For the reasons which follow, default judgment shall be entered.

## I. FACTS AND PROCEDURAL POSTURE

This case arises out of a lease entered into between H. E. Lockhart Management, Inc. (hereinafter "HELM") and Saida Hughes d/b/a Modern Image (hereinafter "Hughes") on December 1, 1996. The lease had a term of three (3) years, and pertained to commercial real property described as Units 235 and 236, located in the Grand Hotel on the property known as 43, 44, 45, and 46 Norre Gade, Charlotte Amalie, St. Thomas, U.S. Virgin Islands.

Pursuant to the terms of the lease, Hughes agreed to pay rental in the amount of Twenty-Seven Thousand Dollars ($27,000.00) per year, in monthly installments of Two Thousand, Two Hundred Fifty Dollars ($2,250.00) Effective January 1, 1998, the parties amended the lease so that it covered only that portion of the premises known as Unit 235. Pursuant to the terms of the lease as amended, Hughes agreed to pay rental in the amount of Fourteen Thousand Nine Hundred Forty-Nine Dollars ($14,949.00) per year, in monthly installments of One Thousand Two Hundred Forty Five Dollars and 75/100 ($1,245.75). Hughes failed to pay the monthly installments due under the amended lease. Due to her breach of the provisions under the lease, on February 20, 1998, HELM served Hughes with a notice of default. Hughes failed to cure her defaults within the time and manner requested. As a result, on March 20, 1998, HELM served Hughes with a Notice of Termination of Lease and Notice to Quit and Vacate Premises, as provided by the terms of the lease. Thereafter, on April 1, 1998, Hughes vacated the premises. On April 7, 1998, HELM filed a complaint against Hughes alleging breach of contract, wherein it seeks to recover such amounts that were due and payable, including charges for maintenance, interest, late fees, as well as such monies as would have been payable for the unexpired lease.

The Defendant, Saida Hughes d/b/a Modern Image, was served on April 14, 1998. The Defendant failed to answer, plead or defend this action within the time required by law. On May 11, 1998, Plaintiff filed a request for entry of default. On May 13, 1998, it appearing that Defendant was not an infant or incompetent, or in the military service, the Clerk of the Court entered a default against Defendant.

On July 7, 1998, Plaintiff then filed a motion for default judgment against Defendant. In support of its motion, Plaintiff submitted to this court several documents, including *inter alia*, a lease agreement, a Schedule of Outstanding Balances, and a letter from Plaintiff to Defendant notifying Defendant that she was in default of her lease agreement. The documents reflected that on several occasions, Defendant failed to make timely payments of rent then due, despite several requests by Plaintiff for payment, and that as of April 1, 1998,[1] there remained due and owing to Plaintiff the sum of Sixteen Thousand Eight Hundred One Dollars and 03/100 ($16,801.03).[2] As directed by a Court Order dated July 30, 1998, plaintiff addressed various provisions of the lease agreement which were perplexing and troubling to the Court. On November 5, 1998, the Court denied Plaintiff's motion for default judgment and scheduled a hearing on the merits for November 23, 1998.

*II. DISCUSSION*

After hearing the testimony of Plaintiff's witnesses on November 23, 1998, the Court determined that several key issues, bearing on the quantum of damages recoverable, required resolution before default judgment could be entered against the defendant. The issues identified were: (1) whether the Virgin Islands Usury laws pertain to leases on real property; (2) whether the eighteen percent (18%) per annum finance charge provided for in the lease between the parties was usurious; (3) whether the terms of the lease survive an affirmative termination by HELM; (4) whether HELM can recover damages from a breach by tenant of the lease; and (5) whether HELM has a duty to mitigate where the terms of the lease survive termination.

*A. The Virgin Islands Usury Laws Apply To A Lease On Real Property.*

Section 952 of V.I. CODE ANN. tit. 11 provides that:

---

[1] The defendant vacated the premises on this date.

[2] This amount represents the sum of: (1) cumulative balance before late charges, interest charges, and water charges, as of March 30, 1998, (as per plaintiff's Revised Schedule of Outstanding Balance) less NSF charges which were not substantiated as listed; plus, (2) late fees in the amount of $425.84; (3) Interest charges in the amount of $1,586.01; and (4) water charges in the amount of $76.15.

No person shall, directly or indirectly, receive in money, goods, or things in action, or in any other manner, any greater sum or value for the loan or use of money, or upon contract founded upon any bargain, sale or loan of wares, merchandise, goods, chattels, lands and tenements, than prescribed in this chapter.

■ In ruling that a lease for real property falls within the type of activity subject to usury prohibitions codified at V. I. CODE ANN. tit. 11, § 951, *et seq*, this Court made an analysis similar to the one undertaken by the United States Court of Appeals for the Third Circuit in *Foreign Commerce v. Tonn*, 789 F.2d 221 (3rd Cir. 1986). In *Foreign Commerce*, the court on review held that V.I. CODE ANN. tit. 11, § 952 applied to the sale of consumer goods. Dissecting the convoluted language of V.I. CODE ANN. tit. 11, § 952 by focusing on, and isolating only the portions of the statute addressing the sale of goods, the court opined that:

" . . . 11 V.I.C. § 952 provides: 'No person shall, directly or indirectly, receive in money . . . any greater sum . . . upon contract founded upon any . . . sale . . . of . . . goods . . . than prescribed in this chapter'."[3]

This court has patterned the methodology of interpreting the statute used by the court in *Foreign Commerce*, in the case sub judice, and as such, the isolated applicable portion now reads:

No person shall, directly or indirectly, receive in money . . . any greater sum . . . upon contract founded upon any . . . loan of . . . lands and tenements, than prescribed in this chapter.

The term "tenements" in its common acceptation applies to land and buildings held of another by tenure. However, when used in its legal sense, it is applicable to anything of a permanent nature that may be holden, including offices, rents, franchises, etc. BLACK'S LAW DICTIONARY 1468 (6th ed. 1990). The term "lands" includes real property. Accordingly, real property leased to the defendant falls

---

[3] Foreign Commerce, supra, at p. 223.

within the type of activity that is subject to the usury prohibitions set forth at V.I. CODE ANN. tit. 11, § 951, *et seq.*

*B. The Eighteen Percent (18%) Per Annum Finance Charge Provided For In The Lease Between HELM and Hughes Was Not Usurious*

Having ruled that the lease is subject to the Virgin Islands Usury laws, the Court must now determine whether any provision of the lease agreement violates the usury statute.

Section 951(b)(1)[4] pertains to written contracts founded upon loans (except mortgage loans), and prescribes that a maximum interest rate of eighteen and one-half percent (18 1/2%) is to be charged if the value of the loan is less than or equal to $9,000. This section also expressly exempts from any maximum interest rate limitations, all loans having a value in excess of $9,000.00.

Because the lease at issue is a written contract founded upon a conditional loan of property, V. I. CODE ANN. tit. 11, § 951 is applicable to it.

■ Furthermore, the lease between HELM and the defendant was one for the loan or "use of" tenements and/or land, by the defendant, for a period of three (3) years, at a cost of Twenty-Seven Thousand Dollars ($27,000.00) per year, the monetary value to the plaintiff being Eighty-One Thousand Dollars ($81,000.00). For the purpose of applying V.I. CODE ANN. tit. 11, § 951 (b)(1), the lease constitutes a contract having a value in excess of Nine Thousand Dollars ($9,000.00). Thus, the imposition of the eighteen percent (18%) per annum interest rate on the outstanding rent due, as agreed to by the parties at Section 3.7 of the Lease, was not usurious.

*C. The Terms Of The Lease Survive An Affirmative Termination By HELM*

Parties to a lease may agree that certain obligations will survive the termination of the landlord-tenant relationship. RESTATEMENT

---

[4] V. I. CODE ANN. tit. 11, § 951(b)(1) provides:

On written contracts, by express agreement of the parties, the maximum rate of interest per annum shall not exceed 18 1/2 % on loans of $9,000 or less. All loans in excess of $9,000 shall be exempted from any maximum interest rate limitations. All loans shall be subject to paragraph (4) of this subsection.

(Second) of Contracts, § 12.1 cmt. (g). The record establishes that the lease was terminated by the landlord pursuant to its provisions under sections 10.1 A (i) and (ii). Under section 10.2 A(iii) of the HELM-Hughes lease, the parties agreed that the tenant remains liable for any rent accruing on the unexpired portion of the lease after the termination of the landlord-tenant relationship.

*D. Plaintiff Can Recover Damages Arising From A Breach By Tenant of The Lease.*

Under Restatement (Second) of Property (Landlord and Tenant), § 12.1(2), where there is a breach of the tenant's obligation to pay the rent reserved in the lease, and except where the parties to the lease validly agree otherwise, the landlord may: (a) recover from the tenant the amount of rent already due; and (b) terminate the lease if the rent that is due is not paid promptly after a demand on the tenant for the rent, unless equitable considerations justify extending the time for payment.

The obligation of the tenant to pay rent does not arise for any period after the lease is terminated.[5] However, the parties to the lease may provide that the tenant will continue to make payments in an amount equal to the rent he had been paying, or in some other amount, when the lease is terminated prematurely.[6] Under such an agreement, the landlord may collect these payments, but the payments will not be rent . . . .[7] Thus, the parties may agree that "amounts equivalent to rent" may continue after termination, and the obligation may be enforceable *as damages, since the payments are not rent in the strict sense of the word.*[8] In the case *sub judice*, the parties expressly agreed, in the lease, that in the event the landlord terminates the lease by virtue of tenant's default in her obligation to pay rent, the tenant would remain liable. As such, HELM reserved the right to collect post-termination "rent", subject only to a duty to mitigate such damages.[9]

---

[5] Restatement (Second) of Property, (Landlord and Tenant) § 12.1 cmt. (g).

[6] *Id.*

[7] *Id.*

[8] *Id.* n. 7 at p. 423.

[9] Restatement (Second) of Contracts, § 350(2).

*E. Under Virgin Islands Law, A Landlord Has A Duty To Mitigate The Tenant's Damages Where The Terms Of The Lease Survive Termination*

A duty to mitigate may arise as a stated obligation under a valid lease, or by operation of law. In determining the existence of a duty to mitigate damages, an examination of the lease should be made since the obligations of the parties may be spelled out therein.[10] If the lease does not prescribe a duty to mitigate, then the existence of such a duty depends on whether one is imposed by the law of the jurisdiction.

In the case *sub judice*, the lease does not mandate a duty to mitigate. In fact, section 10.2 A(vii) of the lease provides that the landlord "shall have no obligation to relet the leased premises . . . and shall in no event be liable for refusal or failure to relet the leased premises . . ." Given provision 10.2 A(vii) of the lease, if a duty to mitigate exists at all, it must arise under Virgin Islands law.[11] Because this court is unaware of any territorial statute or court ruling which mandates the mitigation of damages by a lessor/landlord, any review must be made with respect to the restatements of law approved by the American Law Institute, or the rules of the common law as generally understood and applied in the United States.

The two (2) areas of law that address damages as a result of a tenant's default are Restatement (Second) of Property (Landlord and Tenant), and Restatement (Second) of Contracts.

■ Ordinarily, the Restatement (Second) of Property (Landlord and Tenant) does not recognize any obligation by tenant to pay rent after a lease is terminated, unless the parties agree otherwise. Restatement (Second) of Property (Landlord and Tenant), § 12.1, cmt. (g) states:

"The obligation of the tenant to pay rent does not arise for any period after the lease is terminated. The parties to the

---

[10] 21 ALR3d 534, § 2[b].

[11] The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary. V. I. Code Ann. tit. 1, § 4 (1957).

lease may provide that the tenant will continue to make payments in an equal amount to the rent tenant had been paying, or in some other amount, *when the lease is terminated prematurely.* Under such an agreement the landlord may collect these payments, but such payments *will not be rent . . ."*

Since the amount collected from a tenant after termination of the lease is considered damages and not rent, the law governing the measure of damages is the RESTATEMENT (SECOND) OF CONTRACTS.[12] Because the lease in our case under consideration provided for continued payments by the tenant in the event of tenant's default, even where the landlord terminated the lease, damages for tenant's breach are recoverable. However, mitigation is required.

RESTATEMENT (SECOND) OF CONTRACTS § 350 addresses mitigation of damages, and provides as follows:

(1) Except as stated in Subsection (2), damages are not recoverable for loss that the injured party could have avoided without undue risk, burden or humiliation.

(2) The injured party is not precluded from recovery by the rule stated in Subsection (1) to the extent that he has made reasonable but unsuccessful efforts to avoid loss.

Thus, a party to a contract cannot recover damages for loss that he could have avoided by reasonable efforts. Furthermore, a party is expected to take such *affirmative* steps as are appropriate in the circumstances to avoid loss by making substitute arrangements . . .[13] If the injured party makes [affirmative] efforts to avoid loss but fails to avoid such loss, subsection (2) protects the injured party in that situation if the efforts were reasonable.[14]

Having determined that a duty to mitigate damages exists, the inquiry becomes whether HELM satisfactorily performed this duty. As stated above in subsection (2), the injured party's efforts to

---

[12] After termination [of the lease] occurs by nature of default by the tenant, payments under the lease for the unexpired portion thereof are not rent, but damages recoverable by the landlord. RESTATEMENT (SECOND) OF PROPERTY, Landlord and Tenant § 12.1 n. 7.

[13] RESTATEMENT (SECOND) OF CONTRACTS § 350, cmt. (b).

[14] *Id.* at cmt. (h).

avoid loss must have been affirmative and reasonable. A striking lack of unanimity exists among jurisdictions on the issue of the type of *affirmative* conduct that would constitute "reasonable effort".[15] This notwithstanding, evidence of what a landlord did, or did not do, with respect to seeking, accepting or rejecting new tenants, generally, is . . . crucial.[16] Specifically, proper performance of the landlord's duty may be shown through evidence that he advertised the property, in newspapers or by posting signs on the premises, that he employed a real estate agent to find a new tenant, or that he made efforts toward re-renting by showing the property to prospective tenants.[17]

 Plaintiff asserts that because of the number of properties and the volume of space at its properties, it does not advertise any of its properties individually, and did not so advertise the premises occupied by defendant. Plaintiff further asserts that, instead, it responds to inquiries from prospective tenants, and when a particular space is suited to the needs identified by a prospect, it shows the space to the prospective tenant. Thus, the record before the court indicates that Plaintiff has never taken any affirmative steps to avoid the loss of rental income that necessarily arises as a result of the defendant's default in her obligation to pay rent. As such, this Court finds that any efforts Plaintiff may have made to relet the leasehold property occupied by the defendant were not "reasonable" for the purpose of allowing the Plaintiff the recovery of any expectancy interest that it would have received, had the contract not been terminated; i.e., any rent that the defendant would have had to pay, had the lease not been terminated, for that period from the date of termination of the contract to the end of the lease term.[18]

---

[15] 21 ALR3d 534, § 12(a)(b).

[16] *Id.* at § 13 (a)(b).

[17] *See, generally*, 21 ALR3d 534, § 14(a). While these factors are not necessarily dispositive of the issue, a failure to make such efforts toward re-renting has been regarded as indicative of a lack of due diligence. Several jurisdictions predicate a finding that reasonable efforts to mitigate were made, on a finding that the injured party exercised due diligence in his efforts. 21 ALR3d 534, § 14(b).

[18] Had Plaintiff exercised reasonable affirmative efforts to mitigate post-breach damages, it would have been entitled to recover, as actual damages, such amount as had accrued

131

## III. CONCLUSION

Based on the foregoing, this Court finds that the Plaintiff is entitled to all rent due and payable as of April 1, 1998, in the amount of TWELVE THOUSAND THREE HUNDRED ONE DOLLARS 03/100 ($12,301.03),[19] plus pre-judgment interest, pursuant to V.I CODE ANN. tit. 11, § 951(a)(1), in the amount of ONE THOUSAND ONE HUNDRED SEVEN DOLLARS 10/100 ($1,107.10). Accordingly, Plaintiff is entitled to a judgment in the amount of THIRTEEN THOUSAND FOUR HUNDRED EIGHT DOLLARS 13/100 ($13,408.13). Plaintiff is also entitled to post-judgment interest, pursuant to V.I. CODE ANN. tit. 5, § 426, on the Judgment awarded, from the date of judgment until said judgment is paid.

---

from the date of termination of the lease to the date of this judgment, in addition to its damages herein recoverable.

[19] The gross amount of rent due as of April 1, 1998 is $16,801.03. However, Plaintiff is in possession of Defendant's security deposit of $4,500.00. As such, when outstanding debt is offset by such monies already held by Plaintiff, the net amount of rent due becomes $12,301.03.